James D. DiPasquale, Esq. (011033)
DIPASQUALE & SUMMERS, LLP
1003 Bishop Street, Suite 1260
Honolulu, Hawaii 96813
Telephone:   (808) 240-4771
Facsimile:   (808) 240-4765
Email:       james@ds-lawoffices.com
Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

|  |  |
|---|---|
| **KELLEY O'NEIL'S INC., IRISH ROSE SALOON INC., ANNA O'BRIEN'S INC., O'TOOLE'S IRISH PUB INC.,** and **DOS KALBOS ENTERPRISES, LLC**, in their individual capacities and on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>**DAVID IGE**, in his official capacity as Governor of the State of Hawaiʻi, **CLARE E. CONNORS**, in her official capacity as Attorney General for the State of Hawaiʻi, **THE STATE OF HAWAIʻI**, **KIRK CALDWELL**, in his official capacity as Mayor of the City and County of Honolulu, and **THE CITY AND COUNTY OF HONOLULU.**<br><br>Defendants. | Civil No.: 1:20-cv-449<br><br>**COMPLAINT**<br>**WITH JURY DEMAND** |

Plaintiffs, by their attorneys, **DIPASQUALE & SUMMERS, LLP**, in support of

this class action alleges as follows:

## INTRODUCTION

1.      This case is a federal civil rights action, brought pursuant to 42 U.S.C. § 1983, challenging the executive "shutdown" orders as they relate to the bar and nightlife industry, issued by Defendants Governor DAVID IGE and Mayor KIRK CALDWELL and enforced by them, and by Defendant Attorney General of the State of Hawai'i and the numerous extensions and continued enforcement of the executive orders issued by Defendant Governor DAVID IGE and Mayor KIRK CALDWELL, which continue to be enforced by them, and by Defendant Attorney General of the State of Hawai'i, now 225+ days after Governor first declared a state of emergency on March 5, 2020.

2.      This action seeks declaratory and injunctive relief for deprivations sustained and continued to be sustained by Plaintiffs, on behalf of themselves and all others similarly situated, and for violations committed by Defendants, acting under the color of law, against Plaintiffs' rights, and the rights of all others similarly situated, as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution, and for violations of the Hawaii Small Business Bill of Rights, and Hawai'i Constitution Article 1, § 5.

3.      This is also an action for just compensation required by the Fifth Amendment to the Constitution. The Fifth Amendment to the Constitution requires that the government pay for property it takes: [Rights of Persons] "nor shall private property be taken for public use, without just compensation." U.S. Constitution, 5th Amendment.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over the federal claims by operation of 28 U.S.C. §§ 1331 and 1343. This Court has authority to grant the requested injunctive relief under 28 U.S.C. §1343; the requested declaratory relief under 28 U.S.C. §§ 2201 and 2202; and costs and attorney's fees under 42 U.S.C. § 1988. This Court has supplemental jurisdiction over Plaintiffs' state claims under 28 U.S.C. § 1367. The state law claims in this Amended Complaint are founded upon and arise under, inter alia, Article I, Sections 2, 5 and 8, and Article V, Section 5 of the Constitution of the State of Hawai'i.

5.     Venue lies in the United States District Court for the District of Hawai'i pursuant to 28 U.S.C. § 1391(b). A substantial part of the actions or omissions giving rise to this case occurred within the District, and at least one Defendant resides in this District.

## THE PARTIES

6.     Plaintiff, Kelley O'Neil's Inc. is a is a Hawai'i corporation with its principal place of business in Honolulu County.

7.     Plaintiff, Irish Rose Saloon Inc. is a is a Hawai'i corporation with its principal place of business in Honolulu County.

8.     Plaintiff, Anna O'Brien's Inc. is a is a Hawai'i corporation with its principal place of business in Honolulu County.

9.     Plaintiff, O'Toole's Irish Pub Inc. is a is a Hawai'i corporation with its principal place of business in Honolulu County.

10.     Plaintiff, Dos Kalbos Enterprises, LLC d/b/a Suzie Wong's Hideaway, is a is a Hawai'i limited liability company with its principal place of business in Honolulu County.

11.     Because of Governor Ige's and Mayor Caldwell's Executive Orders and Proclamations, Plaintiffs, and all others similarly situated, and with the limited exception of June 19, 2020 through July 29, 2020, have been forced to shut down their business since March 20, 2020 through the date of the filing of this Complaint.

12.     Defendant David Ige is the Governor of the State of Hawai'i and he signed the Third Supplementary Proclamation on March 23, 2020, which ordered the closure of all bars throughout the State of Hawaii, regardless of whether they served or sold food to their customers, while conversely closing indoor dining for all restaurants, yet permitting their continued operation for purposes of drive-thru, pick-up and delivery service. The State Constitution requires that the Governor ensure that the laws of the state are "faithfully executed." Governor Ige's office for the transaction of business is located at the Hawai'i State Capitol Building, Honolulu, Hawai'i 96813. Governor Ige is sued herein in his official capacity.

13.     Defendant Clare E. Connors is the Attorney General for the State of Hawai'i and is sued in her official capacity. She formally approved the proclamations

and supplements, and is responsible under the law for enforcing its provisions against entities in violation thereof, including against the Plaintiffs. Defendant Attorney General is responsible for executing and administering laws, customs, practices, and policies of the State of Hawai'i, and is currently enforcing the laws, customs, practices and policies complained of in this action.

14.     Defendant State of Hawai'i is the governmental entity under whose auspices Defendant Ige and Defendant Connors exercise authority and in whose interest Defendants are expected to act.

15.     Defendant Kirk Caldwell is the Mayor of the City and County of Honolulu. Defendant Caldwell offices are located at Honolulu Hale, 530 South King Street, Honolulu, Hawai'i, 96813. Defendant Caldwell is being sued in his official capacity. Defendant Caldwell signed Emergency Order No. 2020-01 on March 20, 2020 which ordered the closure of all bars throughout the City and County of Honolulu, regardless of whether they served or sold food to their customers, while conversely closing indoor dining for all restaurants, yet permitting their continued operation for purposes of drive-thru, pick-up and delivery service.

16.     Defendant City and County of Honolulu is the governmental entity under whose auspices Defendant Caldwell exercises authority and in whose interest, Defendants are expected to act.

## APPLICABLE EXECUTIVE "SHUTDOWN" ORDERS

### A.      Governor David Ige and the State of Hawaii

17.     On March 4, 2020 Defendant Governor Ige issued a Proclamation declaring a state of emergency for the State of Hawaii.  The March 4, 2020 Emergency Proclamation was set to expire on April 29, 2020.   A copy of the Emergency Proclamation is attached hereto as **Exhibit A**.

18.     The March 4, 2020 Proclamation was issued upon authority delegated by the legislature via Hawai'i Revised Statutes ("**H.R.S.**") §§ 127A-2,-11,-12, and -14. Under H.R.S. § 127A-14(d): "A state of emergency and a local state of emergency shall terminate automatically sixty days after the issuance of a proclamation of a state of emergency or local state of emergency, respectively, or by a separate proclamation of the governor or mayor, whichever occurs first." Defendant Governor Ige circumvented the limitation upon his delegated authority, however, by issuing a series of "Supplements" purporting to incorporate the initial Proclamation and extend the period of the state of emergency far beyond the statutory 60-day limit.

19.     On March 16, 2020 Defendant Governor Ige issued a Supplementary Emergency Proclamation, which among other acts, extended the disaster emergency relief period through May 15, 2020. A copy of the Supplementary Emergency Proclamation is attached hereto as **Exhibit B**.

20.     On March 23, 2020 Defendant Governor Ige issued a Third Supplementary

Proclamation which among other acts, implemented a mandatory stay at home order, and closed all 'non-essential" businesses and operations.   Under the Third Supplementary Proclamation, which was effective from March 25, 2020 through April 30, 2020, restaurants and other facilities that prepare and serve food, were deemed essential and permitted to continue to sell and serve food on the condition that the food was provided on a pick-up, delivery or takeaway basis only. A copy of the Third Supplementary Proclamation is attached hereto as **Exhibit C**.

21.    On April 25, 2020, Defendant Governor Ige issued a Sixth Supplementary Proclamation which among other acts, reinstated all prior proclamations; continued a ban on all non-essential activities and businesses; and mandated certain social distancing requirements, including: (1) six-foot distances, (2) limited customer occupancy, (3) sanitization and disinfection, (4) face covering, (5) remote access availability, and others. As part of the Sixth Supplementary Proclamation, the Governor suspended certain laws "in order for county and state agencies to engage in emergency management functions…".   One of those laws included HRS Chapter 281, Section 281-31, which enabled the county liquor commissioners to allow licensees to sell unopened beer, wine or prepackaged cocktails with food for pick-up, delivery and take-out. Notably, shortly thereafter, the Honolulu Liquor Commission advised that "[l]icensees engaged in meal service (not Class-specific) may permit for pick up, delivery, take out, or other means for consumption off-premises unopened beer, unopened wine, or unopened pre-packaged

cocktails." According to the Sixth Supplementary Proclamation, the restrictions were to take effect on April 25, 2020 and continue and remain in place until May 31, 2020. A copy of the Sixth Supplementary Proclamation is attached hereto as **Exhibit D**.

22.     On May 18, 2020 Defendant Governor Ige issued an Eighth Supplementary Proclamation which among other acts, reinstated all prior proclamations; continued a ban on all non-essential activities and businesses; mandated certain social distancing requirements, and continued the suspension of HRS Chapter 281, Section 281-31. Similar to the Third Supplemental Proclamation, restaurants and other facilities that prepared and served food, were deemed essential and permitted to continue to sell and serve food on the condition that the food was provided on a pick-up, delivery or takeaway basis only.   According to the Eighth Supplementary Proclamation, the disaster emergency relief period was to continue from the date of the Proclamation through June 30, 2020. A copy of the Eighth Supplementary Proclamation is attached hereto as **Exhibit E**.

23.     On June 10, 2020 Defendant Governor Ige issued a Ninth Supplementary Proclamation which among other acts, reopened much of the economy provided that certain social distancing requirements were adhered to by operating businesses. Notwithstanding, bars and other nightlife venues were not permitted to reopen as they were not deemed part of the Federal critical infrastructure nor were they identified as a business permitted to reopen under the "State Roadmap to Recovery and Resilience", as

determined by Honolulu County. A copy of the Ninth Supplementary Proclamation is attached hereto as **Exhibit F**.

24.     On July 17, 2020 Defendant Governor Ige issued a Tenth Supplementary Proclamation, followed by a Twelfth Supplementary Proclamation on August 20, 2020, and a Thirteenth Supplementary Proclamation on September 22, 2020.  All three of these proclamations were largely consistent with the Ninth Supplemental Proclamation, and they too prohibited the reopening of bars and other nightlife venues as they were not part of the Federal critical infrastructure nor were they identified as a business permitted to reopen under the "State Roadmap to Recovery and Resilience", as determined by Honolulu County.  The disaster emergency relief period was extended by the Tenth Supplemental Proclamation to August 31, 2020, then further extended to September 30, 2020 by the Twelfth Supplementary Proclamation (dated August 20, 2020) and then again, extended to October 31, 2020 by the Thirteenth Supplementary Proclamation (dated September 23, 2020). A copy of the Tenth Supplementary Proclamation is attached hereto as **Exhibit G**. A copy of the Twelfth Supplementary Proclamation is attached hereto as **Exhibit H**. A copy of the Thirteenth Supplementary Proclamation is attached hereto as **Exhibit I**.

**B.     Mayor Kirk Caldwell and the City and County of Honolulu.**

25.     On March 4, 2020 Defendant Mayor Caldwell issued a Proclamation declaring a state of emergency for the City and County of Honolulu.  The March 4, 2020

Emergency Proclamation was set to expire sixty (60) days after the date of the Proclamation. A copy of the Emergency Proclamation is attached hereto as **Exhibit J.**

26.    On March 18, 2020 Defendant Mayor Caldwell issued a Supplemental Proclamation of Emergency or Disaster in which he, among other acts, mandated the closure of all bars and nightclubs for 15 days, and the closure of all restaurants with the exception of drive-thru, pickup or delivery service.   Notably, the Supplemental Proclamation did not define "bar" or "nightclub" despite the fact that many general dispenser alcohol license holders also hold Department of Health food permits and are authorized to sell food to its customers. The March 18, 2020 Supplemental Proclamation was set to expire sixty (60) days after the date of the Proclamation. A copy of the Supplemental Emergency Proclamation is attached hereto as **Exhibit K.**

27.    On March 20, 2020 Defendant Mayor Caldwell issued Emergency Order No. 2020-01 ("**EO1**") which was akin to his March 18, 2020 Supplemental Proclamation.  In EO1, Mayor Caldwell officially mandated the closure of all bars and nightclubs for 15 days (until April 4, 2020), and the closure of all restaurants with the exception of drive-thru, pickup or delivery service.   EO1 defined a "bar" as "any establishment primarily engaged in the serving of alcoholic beverages for consumption by guests on the premises regardless of whether food is served, including but not limited to taverns, cocktail lounges, karaoke rooms/areas, and cabarets, and including outdoor areas of such establishments."   Conversely, "restaurant" was defined as "an eating

establishment, including but not limited to, coffee shops, cafeterias, sandwich stands, and the like, which offer for sale food to the public, guests, or employees for consumption within the establishment. <u>The term "Restaurant" includes a bar area within a Restaurant</u> and outdoor areas of a Restaurant".  A copy of the EO1 is attached hereto as **Exhibit L.**

28.    On March 22, 2020 Defendant Mayor Caldwell issued Emergency Order No. 2020-02 ("**EO2**") in which he imposed a "Stay at Home, Work from Home Order" that closed all 'non-essential" businesses and operations.  Under EO2, "<u>restaurants and other facilities that prepare and serve food</u>", were deemed essential and permitted to continue to sell and serve food on the condition that the food was provided on a pick-up, delivery or takeaway basis only.  EO2 became effective on March 23, 2020 and was to continue until April 30, 2020 unless earlier terminated. A copy of the EO2 is attached hereto as **Exhibit M.**

29.    On April 29, 2020 Defendant Mayor Caldwell issued Emergency Order No. 2020-09 ("**EO9**") in which he extended the EO4 "Stay at Home, Work from Home Order" that closed all 'non-essential" businesses and operations.   Under EO2, "<u>restaurants and other facilities that prepare and serve food</u>", were deemed essential and permitted to continue to sell and serve food on the condition that the food was provided on a pick-up, delivery or takeaway basis only.  EO9 continued until May 18, 2020. A copy of the EO9 is attached hereto as **Exhibit N.**

30.     On May 6, 2020 Defendant Mayor Caldwell issued a Second Supplemental Proclamation extending the state of emergency for the City and County of Honolulu. Until July 17, 2020. A copy of the Second Supplemental Proclamation is attached hereto as **Exhibit O.**

31.     On the same date, May 6, 2020, Defendant Mayor Caldwell issued Emergency Order No. 2020-10 ("**EO10**") further extending the EO4 "Stay at Home, Work from Home Order" through May 31, 2020, which was subsequently extended until June 30, 2020 via Mayor Caldwell's May 13, 2020 Emergency Order No. 2020-11 ("**EO11**").  A copy of the EO10 is attached hereto as **Exhibit P.**  A copy of the EO11 is attached hereto as **Exhibit Q.**

32.     On May 21, 2020, Defendant Mayor Caldwell issued Emergency Order No. 2020-13 ("**EO13**") authorizing restaurants to reopen indoor dining subject to certain social distancing, reduced occupancy, covid mitigation, operational, and hygiene regulations. Notably, bars and nightclubs were not permitted to reopen (indoor service or delivery/take-away) regardless of whether the establishments possessed a DOH food permit, and regardless of the fact food service establishments were now permitted to sell both food and alcohol to go. A copy of the EO13 is attached hereto as **Exhibit R.**

33.     On June 20, 2020 Defendant Mayor Caldwell issued a Third Supplemental Proclamation extending the state of emergency for the City and County of Honolulu. Until July 31, 2020. A copy of the Third Supplemental Proclamation is attached hereto

as **Exhibit S**.

34.　　On June 19, 2020 Defendant Mayor Caldwell issued Emergency Order No. 2020-16 ("**EO16**") authorizing bars to reopen subject to certain social distancing, reduced occupancy, covid mitigation, operational, and hygiene regulations. A copy of the EO16 is attached hereto as **Exhibit T**.

35.　　On July 29, 2020 Defendant Mayor Caldwell issued Emergency Order No. 2020-21("**EO21**") reordering the closure of all bars and nightclubs.  A copy of the EO21 is attached hereto as **Exhibit U**.  According to EO21, "due to ongoing and heightened public health concerns linked to the spread of COVID-19, effective immediately and until further notice, [] bars may not operate within the City.  Specifically, EO21 defines a "bar" as a Class 2, 5, 6, 10, 11, 12, 13, 14, 15, 16, 17, or 18 liquor license, as defined by the Rules of the Liquor Commission of the City and County of Honolulu, with the exception of restaurants operating under Class 12.  Attached hereto as **Exhibit V** is the General Guide for Liquor Licenses from the Honolulu Liquor Commission detailing the various license classifications. EO21 became effective on July 29, 2020 and was to continue until August 31, 2020.

36.　　On July 29, 2020 Defendant Mayor Caldwell issued a Fourth Supplemental Proclamation extending the state of emergency for the City and County of Honolulu. Until August 31, 2020, followed by an August 6, 2020 Fifth Supplemental Proclamation further extending the state of emergency for the City and County of Honolulu. Until

September 30, 2020. A copy of the Fourth Supplemental Proclamation is attached hereto as **Exhibit W**.

37.    On August 6, 2020 Defendant Mayor Caldwell issued Emergency Order No. 2020-23 ("**EO23**") in which he imposed a second "Stay at Home, Work from Home Order" that closed all 'non-essential" businesses and operations.  Under EO23, "restaurants and other facilities that prepare and serve food", were deemed essential and permitted to continue to sell and serve food on the condition that the food was provided on a pick-up, delivery or takeaway basis only.  Bars were not permitted to open, even for delivery or take-out purposes, regardless of food service.  EO23 became effective on August 8, 2020 and was to continue until September 4, 2020 unless earlier terminated. A copy of EO23 is attached hereto as **Exhibit X**.

38.    On August 18, 2020 Defendant Mayor Caldwell issued Emergency Order No. 2020-24 ("**EO24**"), followed by Emergency Order No. 2020-25 on August 25, 2020 ("**EO25**"),  and Emergency Order No. 2020-26 on September 8, 2020 ("**EO26**"), all of which was essentially the second "Stay at Home, Work from Home Order" until September 23, 2020. A copy of the EO24 is attached hereto as **Exhibit Y**. A copy of the EO25 is attached hereto as **Exhibit Z**. A copy of the EO26 is attached hereto as **Exhibit AA**.

39.    On or about September 23, 2020 Defendant Mayor Caldwell released Honolulu's COVID-19 Recovery Framework ("**HCRF**") which was designed to, among

other things, "reduce the likelihood of having to impose drastic restrictions (e.g. stay at home / work from home orders) on City residents' activities outside of their homes/dwellings." The HCRF is a four tier framework "determined by two criteria: (1) the number of daily cases reported; and (2) the positivity rate, using 7-day averages for both metrics over two or four week periods...".  A copy of the HCRF is attached hereto as **Exhibit BB.**

40.    The HCRF provides:

Activities and designated businesses and operations will be opened (with mitigation measures) under Honolulu's COVID-19 Recovery Framework using the risk-based criteria, as outlined below. Those with lower risk of spreading COVID-19 will be allowed sooner, and those presenting higher risk of spread COVID-19 will be allowed later. Criteria used to determine low/medium/high risk activities, businesses, and operations:

- Ability to accommodate wearing face coverings at all times;

- Ability to physically distance between individuals from different households;

- Ability to limit the number of people per square foot;

- Ability to limit duration of exposure;

- Ability to limit amount of mixing of people from differing households and communities;

- Ability to limit amount of physical interactions of visitors/patrons;

- Ability to optimize ventilation (e.g. indoor vs outdoor, air exchange and filtration);

- Ability to limit activities that are known to cause increased spread (e.g.

singing, shouting, heavy breathing; loud environs that cause people to raise voice);

- Ability to enforce restrictions and required mitigations measures

41.    Under the HCRF, restaurants, bowling alleys, tours, commercial recreational boating, open trolleys, salons, barbershops, all retail and service providers, malls, churches, zoos, sea life attractions, aquariums, museums, botanical gardens, movie theaters, group physical activity classes, and outdoor gyms are all permitted to reopen, with restrictions under Tier 1.

42.    As of the date of this Complaint, Honolulu remains in Tier 1.

43.    Unfortunately, for bars and nightclubs, they are not permitted to open under the HCRF until Tier 4, and even then, only with "Special Restrictions and Requirements".  At Tier 4, nearly every other business referenced in Paragraph 42 above is permitted to open with no, or limited, restrictions.

44.    On September 23, 2020 Defendant Mayor Caldwell issued a Sixth Supplemental Proclamation extending the state of emergency for the City and County of Honolulu. Until October 31, 2020.

## STATEMENT OF FACTS

45.    From March 20, 2020 through June 19, 2020, and from July 29, 2020 through the present day, 185+ day in total, Plaintiffs, and all others similar situated, were ordered by Defendants' to cease operations until further notice.  During this entire time period, businesses such as Target, Walmart and Home Depot were allowed to remain

open for on premises shopping as "Essential" businesses. Similarly, during this entire time period, restaurants were deemed essential and permitted to remain open, albeit for a few weeks they were limited to take-out and delivery. Meanwhile, Plaintiffs, and all others similarly situated, health protocols are sufficiently similar to those businesses that were allowed to remain open.

46.   Defendants' executive orders and proclamations do not provide a pre- or post- deprivation remedy to question "essential" or to determine whether Plaintiffs can open with the same health related protocols as the "essential" businesses allowed to open. There has never been any health inspection of the Plaintiffs', and all others similarly situated, restaurants and bars, no analysis of the health status of restaurants and bars as essential and no analysis of Plaintiffs', and all others similarly situated, health related protocols to see if they meet the same health standards as allowed for essential businesses.

47.   There was a list of businesses that were allowed to remain open for on-premises operations and that classification was neither reasonable nor rational, but rather random and unsupported by data, and therefore a denial of due process.

48.   The State and City and County of Honolulu continues to govern capriciously and arbitrarily by allowing bars and nightlife venues to open and operate everywhere in the State, subject to adherence to CDC guidance, except for Oahu.

49.   In a recent United States Senate Health, Education, Labor & Pensions

Committee Hearing, Senator Rand Paul, a doctor said the following, "It is a fatal conceit to believe that any one person or small group of people have the knowledge necessary to direct an economy, or dictate, public health behavior." "Government health experts need to show caution in their prognostications. It is important to realize that if society meekly submits to an expert and that expert is wrong, a great deal of harm may occur."[1]

50.     What were initially billed as temporary measures necessary to "flatten the curve" and protect hospital capacity have become open-ended restrictions aimed at a very different end – namely, stopping the spread of an infectious disease and preventing new cases from arising - which requires ongoing efforts and may never result in the complete eradication of this novel coronavirus.

51.     The Courts may provide state and local officials greater deference when making time-sensitive decisions in the midst of an emergency but the deference cannot go on forever. It is no longer March, April or May. It is now late October and Defendants have no anticipated end-date to their emergency interventions.

52.     Absent a robust system of checks and balances, the guarantees of liberty set forth in the Constitution are just ink on parchment. There is no question that a global pandemic poses serious challenges for governments. But the response to this pandemic or any emergency for that matter cannot be permitted to undermine our system of constitutional liberties or the system of checks and balances protecting those liberties.

---

[1] U.S. Senate Health, Education, Labor & Pensions Committee Hearing, 6/29/20

Defendants have been permitted to act, and continue to act, with no input from the legislature. The judiciary remains the ONLY check on the exercise of Defendants' power.

53.   As reported by the Star Advertiser on September 21, 2020[2]:

Hawaii had the second--highest rate among states for permanent business closures from March 1 to July 10, at 6.9 permanent closures per 1,000 businesses.

Hawaii's rate, which trailed only Nevada at 7.3, suggests that more than 1,000 Hawaii businesses may have already folded, based on roughly 150,000 commercial establishments reflected in 2018 state data. About 33,000 of total businesses had employees while 113,000 did not, according to the data.

Yelp also said Honolulu's permanent business closure rate of 7.9 was third-highest among U.S. cities, behind only Las Vegas and Stockton, Calif., and just ahead of San Francisco.

"Cities such as San Francisco and Honolulu, which have had some of the nation's strictest stay-at-home orders, are now seeing the highest numbers of closures relative to the number of businesses in their respective cities," the Yelp report said.

54.   With the exception of the time periods during the first and second shutdowns, all nearly all businesses, essential and non-essential, were permitted to open and operate, provided that they adhered to social distancing and other CDC guidance and State/City regulations.   There was, and there is, no rationale that supports the decision to keep bars and nightlife venues closed.

---

[2] https://www.staradvertiser.com/2020/09/20/hawaii-news/hawaii-businesses-claimed-by-covid-19-could-total-1000-on-way-to-25000/

55.     Assuming, *arguendo*, that the decision turned on whether bars were able to provide an essential service, notwithstanding the fact that most open businesses do not, Plaintiffs, and all others similarly situated, are able to provide its customers an essential service.  Plaintiffs, and all others similarly situated, can provide dining indoors, just like every other restaurant in Hawaii.  Notably, every bar on Oahu is required to have a food service establishment permit (restaurant classification) which permits them to sell food and beverage to its customers.  The only distinction is whether the bar has an on-site kitchen that authorizes them to prepare food on-premises, as opposed to an establishment with no kitchen that is nonetheless permitted to sell prepackaged food products (*e.g.* bentos, sandwiches, salads, etc.) or contract with a local restaurant to service the bar's customers.

56.     Plaintiffs, and all others similarly situated, have or are able to conform their restaurants and bars in accordance with the State Roadmap to Recovery and Resilience, and the restrictions set forth in Mayor Caldwell's Executive Orders as they apply to restaurants, in that they are able to provide food options for their customers.

57.     Plaintiffs, and all others similarly situated, have been affected terribly by the Governor's executive orders. Under threat of criminal penalties, Plaintiffs, and all others similarly situated, have been forced to close depriving the Plaintiffs, and all others similarly situated, of their liberty and property interests without due process. At the same time, without offering any justification, the Mayor has allowed restaurants

with full service, free standing customer bars to reopen.  Similarly, the Governor and Mayors of the Counties of Kauai, Maui and Hawaii have not only permitted restaurants to reopen, but bars as well.

58.    Each of the foregoing establishments must also adhere to guidance from the U.S. Centers for Disease Control and Prevention ("**CDC**") on "social distancing" and, as it pertains to restaurants on Oahu, the restrictions set forth in Mayor Caldwell's Executive Orders.  Plaintiffs, and all others similarly situated, are fully capable of adhering to those same guidelines if allowed to open at 50% capacity, with or without a requirement that food service be offered.

59.    At the present time, Plaintiffs, and all others similarly situated, have lost several million dollars in revenue and have had to lay off countless employees throughout Honolulu.

## CLASS ACTION ALLEGATIONS

60.    This action meets all the requirements of a class action under C.P.L.R. § 901.

61.    The putative Class consists of all bars and venues holding a Class 2, 5, 6, 10, 11, 12, 13, 14, 15, 16, 17, or 18 liquor license, as defined by the Rules of the Liquor Commission of the City and County of Honolulu, who have been shut down by Defendant Governor Ige's Proclamations and Defendant Mayor Caldwell's executive orders since March 18, 2020. The putative Class continues to be shut down as of the date

of this Complaint with no reasonable expectation of reopening in the near future.

62.     Excluded from the Class are Defendants.

63.     While Plaintiffs do not know the exact number of the members of the Class, Plaintiffs believe there will be a few to several hundred members.

64.     The legal constitutionality or unconstitutionality of the enforcement of the executive shutdown orders and in the continued enforcement of the executive shutdown orders constitute questions common to the Class and predominates over any question affecting only individual members.

65.     The claim for a declaration of unconstitutionality and the claim for a Taking by the Plaintiffs, as Class representatives, are typical of the claims of the members of the Class. Plaintiffs and all members of the Class are similarly affected by Defendants' unconstitutional executive shutdown orders and their enforcement thereof.

66.     Plaintiffs, as class representatives, will fairly and adequately protect the interests of the Class. Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of other members of the Class. Plaintiffs' interests are coincident with, and not antagonistic to those of the other members of the Class. Plaintiffs are represented by counsel who are competent and experienced in the prosecution of Equal Protection, Due Process, Constitutional and Takings claims.

67.    A class action is superior to any other method for the resolution of this dispute, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured bar owners with a method of obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

68.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications, establishing incompatible standards of conduct for Defendants.

## COUNT I - PROCEDURAL DUE PROCESS

69.    Plaintiffs incorporate paragraphs 1-68 as if fully set forth herein.

70.    "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

71.    The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution provides that no State can "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV,§ 1, cl. 3.

72.    The procedural component of the Due Process Clause prohibits government from depriving Plaintiffs and members of the putative Class of liberty and property interests without providing any process before or after the deprivations occurred.

73.    To establish a procedural due process claim under 42 U.S.C. § 1983, Plaintiffs and Class members must show that (1) they had a life, liberty, or property interest protected by the Due Process Clause; (2) they were deprived of this protected interest; and (3) the state did not afford them adequate procedural rights. See Daily Servs., LLC v. Valentino, 756 F.3d 893, 904 (6th Circ. 2014).

74.    Plaintiffs and the putative Class members have a protected liberty interest in the right to live without arbitrary governmental interference with their liberty and property interests. County of Sacramento v. Lewis, 523 U.S. 833, 845 (1988).

75.    Liberty "denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized ... as essential to the orderly pursuit of happiness by

free men." <u>Board of Regents of State Colleges v. Roth</u>, 408 U.S. 564,572 (1972) (emphases added).

76. Plaintiffs and members of the putative Class have protected liberty and property interests, which Defendants infringed through the Executive shutdown Orders:

> a. Plaintiffs and members of the putative Class have been, and are being, denied the right to operate their bars at the present time and since March and will be allowed to for the foreseeable future. They cannot survive without operating.

77. Neither Governor Ige nor Mayor Caldwell provided any procedural due process before issuing the executive shutdown Orders and Proclamations. Nor do the shutdown Orders or Proclamations provide any mechanism for post- deprivation review.

78. Governor Ige nor Mayor Caldwell acted under color of law in their official capacities and within the scope of their official duties when issuing the executive shutdown Orders and Proclamations.

79. As a direct and proximate cause of the failure to provide any pre- or post-deprivation process, Plaintiffs and members of the putative class suffered prejudice under threat of criminal and civil sanctions.

80.    Governor Ige's Proclamations acknowledge that bars outside of Honolulu can safely operate like other businesses by adhering to "social distancing" rules.

81.    Plaintiffs and members of the putative class can operate in full compliance with all of these rules.

82.    By failing to provide any pre- or post-deprivation review of the Orders and Proclamations shuttering their businesses, Plaintiffs and members of the putative Class are suffering substantial losses of liberty and property:

   a.    Plaintiffs and members of the putative class have lost significant revenue over the eight months since the executive shutdown Orders went into effect.

83.    The prejudice that Plaintiffs and members of the putative Class have suffered would not have occurred but for Defendants' deprivations of their liberty and property interests.

84.    Plaintiffs and members of the putative Class seek a declaration that the executive shutdown Orders and Proclamations, at-least as they pertains to the ongoing closures of bars and nightlife venues, violate the procedural component of the Due Process Clause, and an injunction against further infringements of their rights under this Clause as described in the Prayer for Relief.

## **COUNT II. - SUBSTANTIVE DUE PROCESS**

85.    Plaintiffs incorporates paragraphs 1-84 as if fully set forth herein.

86.    "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

87.    The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution provides that no State can "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV,§ 1, cl. 3.

88.    The substantive component of the Due Process Clause prohibits government from taking action that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty." United States v. Salerno, 481 U.S. 739, 746 (1987) (cleaned up).

89.    Plaintiffs and members of the putative Class have a protected liberty interest in the right to live without arbitrary governmental interference with its liberty and property interests. County of Sacramento v. Lewis, 523 U.S. 833, 845 (1988).

90.    Liberty "denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy

those privileges long recognized ...  as essential to the orderly pursuit of happiness  by free men." Board of Regents of State Colleges v. Roth, 408 U.S. 564, 572 (1972) (emphases added).

91.    The Executive Shutdown Orders and Proclamations shock the conscience and interfere with Plaintiffs' and members of the putative Class deeply-rooted liberty and property rights, including the right to work, right to contract, and right to engage in commerce, for all of the reasons described in the General Allegations and in each of the Counts of this Complaint, which are incorporated into this Paragraph by reference.

92.    Plaintiffs and members of the putative Class could and can conduct business in full compliance with all of the rules imposed on restaurants and bars which are currently permitted to operate elsewhere in the State. Thus, the shutdown Orders are not narrowly tailored to achieve a compelling governmental interest.

93.    Nor is there any rational basis any longer since the virus is relatively under control to deprive Plaintiffs and members of the putative Class of their liberty and property interests in performing services for willing customers when they can do so safely and in the same (or reasonably safe equivalent) manner as other businesses allowed to operate (such as manufacturing, other restaurants and bars throughout the state, bowling alleys, tours, commercial recreational boating, open trolleys, salons, barbershops, all retail and service providers, malls, churches, zoos, sea life attractions,

aquariums, museums, botanical gardens, movie theaters, group physical activity classes, and outdoor gyms).

94.    As recently stated by Dr. David Nabarro of the World Health Organization, "[w]e in the World Health Organization do not advocate lockdowns as the primary means of control of this virus," He added that lockdowns can only be justified "to buy you time to reorganize, regroup, rebalance your resources, protect your health workers who are exhausted. But by and large, we'd rather not do it." Nabarro went on to describe how "lockdowns just have one consequence that you must never, ever belittle, and that is making poor people an awful lot poorer."

95.    In the alternative, the Executive shutdown Orders are not reasonably related to a legitimate governmental interest.

96.    Governor Ige and Mayor Caldwell acted under color of law in an official capacity and within the scope of their official duties when issuing the shutdown Orders and Proclamations.

97.    Plaintiffs and members of the putative Class seek a declaration that the Executive shutdown Orders violate the substantive component of the Due Process Clause, and an injunction against further infringements of its rights under this Clause as described in the Prayer for Relief.

## COUNT III- EQUAL PROTECTION

98.    Plaintiffs incorporate paragraphs 1-97 as if fully set forth herein.

99.     "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

100.    The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution provides that no State can "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV,§ 1, cl. 4.

101.    The Executive shutdown Orders deprive Plaintiffs and members of the putative Class of the equal protection of the law because they allow all restaurants with bars on Oahu, and all restaurants and bars outside Honolulu to operate, albeit at a reduced capacity, but not Plaintiffs' and members of the putative Class's businesses, even though they are similarly situated.

102.    Under Mayor Caldwell's executive orders, all bars in the City and County of Honolulu must remained closed until Tier 4 is reached, which is not reasonably expected to occur until 2021, and even then, it is unknown what restrictions and reduced occupancy will be placed on bars that are permitted to reopen at that time.  This Tier 4 designation is completely arbitrary, random and capricious, considering that Plaintiffs can maintain equivalent strict social distancing but are not

allowed to re-open until some presently unknown future date, and in fact can be criminalized for doing so.

103.   This is even more unreasonable given Governor Ige's Sixth Proclamation which suspended HRS Chapter 281, Section 281-31 and authorized the off-premises sale of alcohol, and the fact that the Food Service Permits held by Plaintiffs and the members of the putative Class's business permit them to sell food, both on and off premises.  Only on-premises preparation of food is limited, and that restriction can be easily overcome, per the Department of Health.

104.   Plaintiffs and members of the putative Class could and can conduct business in full compliance with all of the rules imposed on restaurants, bars and other businesses allowed to operate at 50% indoor capacity, or reasonably equivalent and equally safe measures tailored to the unique nature of the indoor dining. Thus, the Executive Orders and Proclamations are not narrowly tailored to achieve a compelling governmental interest.

105.   In the alternative, the Executive Orders and Proclamations, as they pertain to the shut down and ongoing restrictions on bars and nightlife venues, are not reasonably related to a legitimate governmental interest.

106.   Governor Ige and Mayor Caldwell acted under color of law in an official capacity and within the scope of their official duties when issuing the shutdown Orders and Proclamations.

107.   Plaintiffs and members of the putative Class seek a declaration that the Executive shutdown Orders and Proclamations violate the Equal Protection Clause, and an injunction against further infringements of their rights under this Clause as described in the Prayer for Relief.

## COUNT IV- EQUAL PROTECTION UNDER STATE LAW

108.   Plaintiffs incorporate paragraphs 1-107 as if fully set forth herein.

109.   Article 1 § 5 of the Hawaii Constitution states that " No person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws…".

110.   By classifying businesses into essential v. non-essential, the State is treating like businesses differently. In addition, by allowing bars to open based on where they are located is treating like businesses differently. Similarly, allowing two restaurants with bars to be treated differently is simply unconstitutional, particularly since the Executive Orders and Proclamations do not require customers to purchase food with their alcoholic beverages.  Thus, a customer can walk into any restaurant that serves alcohol and consume their beverage, on-site, without any requirement that they order and consume food.

111.   Across the State businesses have now re-opened and are operating and restaurants  (both within and outside of Honolulu) and  bars outside of Honolulu are allowed  to operate at 50% capacity, while Plaintiffs and members of the putative

Class have been ordered to shut down until Tier 4 is reached, which is not reasonably expected to occur until 2021, even though Plaintiffs and members of the putative Class's health protocols are sufficiently similar to those businesses that were allowed to stay open. In-deed, the given the underlying methodology of the tiered system, it is entirely conceivable that Tier 4 may never reached, given the difficulty in eradicating other forms of the novel coronavirus.

112.    Defendants' Executive Orders and Proclamations did not provide a pre- or post- deprivation remedy to question "essential" or to question whether or not bars can operate safely indoors in Honolulu at 50% indoor capacity. There has never been any health inspection of the Plaintiffs', and all others similarly situated, restaurants and bars, no analysis of the health status of restaurants and bars as essential and no analysis of Plaintiffs', and all others similarly situated, health related protocols to see if they meet the same health standards as allowed for essential businesses.

113.    The unequal, random, arbitrary and unfair treatment has continued in the re- opening guidance. Restaurants, bowling alleys, tours, commercial recreational boating, open trolleys, salons, barbershops, all retail and service providers, malls, churches, zoos, sea life attractions, aquariums, museums, botanical gardens, movie theaters, group physical activity classes, and outdoor gyms are allowed to open their doors, but bars and nightlife venues in Honolulu remains locked down until Tier 4 is reached.

114.   In his September 22, 2020 news conference[3], Mayor Caldwell was asked '[i]f bars can't open, why is it fair for restaurants to serve alcohol?"  Mayor Caldwell responded, '[b]ecause, when you are in a restaurant, you are sitting at a table in a group of 5 and you are much better managed.  We know at bars, that does not occur and, we know of examples of bars, including during the stay at home, work at home order, still being open.  Brix & Bones…open…bad bad example."[4]

115.   Mayor Caldwell's rationale constitutes random, arbitrary and unfair treatment, based on the actions of one or a few operators, rather than a considered approach to ensure the equal protection of all citizens, particularly since there is no reasonable basis upon which to contend that bars cannot appropriately manage their customers.

116.   As a result of the unequal treatment of like businesses, the executive lockdown orders violate Article 1, § 5 of the Hawaii Constitution.

## PRELIMINARY  INJUNCTION

117.   Plaintiffs incorporate paragraphs 1-116 as if set forth herein.

118.   All of the acts of Defendants, their officers, agents, employees, and servants were executed and are continuing to be executed by Defendants under the color and pretense of the executive orders.

---

[3] https://www.hawaiinewsnow.com/2020/09/22/caldwell-oahus-bars-nightclubs-likely-shuttered-until-least-december/
[4] Notably, as of the date of this Complaint, Brix and Bones is legally open and operating.

119.   Plaintiffs and members of the putative Class are suffering irreparable harm from the conduct of Defendants, including the resultant permanent closure of innumerable bars throughout Oahu.

120.   Plaintiffs and members of the putative Class have no adequate remedy at law to correct or redress the deprivation of its rights by Defendants.

121.   Unless the enforcement of the executive orders is enjoined, Plaintiffs and members of the putative Class will continue to suffer grave irreparable harm.

## VIOLATION OF THE TAKINGS CLAUSE OF THE FIFTH AMENDMENT

122.   Plaintiffs incorporate paragraphs 1-121 as if set forth herein.

123.   The Supreme Court has long held that "the Fifth Amendment... was designed to bar Government from forcing people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." See Armstrong v. United States, 364 U.S. 40, 49 (1960).

124.   Defendant's Executive Orders and Proclamations mandated that because Plaintiffs and members of the putative Class were a "non-essential" business, Plaintiffs and members of the putative Class were ordered to "shut down" and cease all operations as a means to help curb the spread of covid-19. Such a mandate completely and unconstitutionally deprived Plaintiffs and members of the putative Class, of the economically beneficial use of their business without just compensation.

125.   Defendants' Proclamations and Orders adversely impacts the Plaintiffs' use of their Tangible Property and Physical Locations to such an extent that the Order entirely diminishes the economically beneficial use of those properties.  Stated another way, Defendants' Proclamations and Orders prohibit all economically beneficial and profitable uses of the Plaintiffs' tangible property and physical location. The entirety of the Plaintiffs' property rights have been extinguished

126.   The Supreme Court has long recognized that a Taking may be effected not only by government's physical occupation of private property but also by regulations that "go too far." See Tahoe-Sierra Presidential Council v. Tahoe Regional Planning Agency, 535 U.S. 302 (2002).

127.   As of the date of this Complaint, Plaintiffs and members of the putative Class have been ordered to shutdown for 225+ days even though restaurants with bars are permitted to open and operate without any food service requirements, and bars are permitted to open and operate elsewhere in the State.

128.   Defendants' Executive Orders and Proclamations, and the enforcement thereof has caused both a complete and total regulatory and physical taking of Plaintiffs' and members of the putative Class's property without just compensation in violation of the Takings Clause of the Fifth Amendment to the U.S. Constitution. As a result, Defendants' blatant violation of the Takings Clause of the 5th Amendment has caused proximate and legal harm to Plaintiffs and members of the putative Class.

129.   Plaintiffs and members of the putative Class are entitled to just compensation in the form of lost income from the use of its property.

130.   The Takings Clause "…is designed not to limit the governmental interference with property rights per se, but rather to secure compensation in the event of otherwise proper interference amounting to a taking." Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 536-37 (2005) (quoting First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, 482 U.S. 304, 315 (1987) (emphasis in original)).

131.   The Takings Clause bars government actors "…from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." Armstrong v. United States, 364 U.S. 40, 49 (1960).

132.   Plaintiffs and members of the putative Class have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the executive shutdown orders.

133.   The Plaintiffs have suffered a complete loss of "all economically beneficial uses" of their property while the Defendants' proclamations and orders remain in effect. This complete loss constitutes a categorical taking, whether it is the Plaintiffs' inability to operate their businesses at their physical locations or their

inability to exercise any of their other property rights with regard to their tangible property. See Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1019 (1992).

134.  The Plaintiffs "have been called upon to sacrifice all economically beneficial uses [for their properties] in the name of the common good, that is to leave [their] properties economically idle and they have suffered a taking." Lucas, 5050 U.S. at 1019. This sacrifice is not being exerted upon the rest and remainder of the Honolulu County hospitality industry nor is the application of this Order evenly executed for its stated purpose. There is absolutely NO equal application of this onerous Order.

135.  In the alternative, under the framework articulated by the Supreme Court in Penn Central, the Defendants' proclamations and orders constitute a taking based upon "the magnitude of [the Orders] economic impact and the degree to which [the Orders] interfere with legitimate property interests." Lingle, 544 U.S. 528 at 540. 41.

136.  The Supreme Court's analysis in Penn Central sets forth the framework for assessing whether government action is considered a regulatory taking, identifying "several factors that have particular significance." Penn Central Transp. Co. v. New York City, 438 U.S. 104, 124 (1978).

On the other hand, if the regulation "fall[s] short of eliminating all economically beneficial use, a taking nonetheless may have occurred," Palazzolo [v. Rhode Island], 533 U.S. [606] at 617, 121 S.Ct 2448[, 150

L.Ed.2d 592 (2001)], and **the court looks to three factors to guide its inquiry: (1) "[t]he economic impact of the regulation on the claimant," (2) "the extent to which the regulation has interfered with distinct investment-backed expectations," and (3) "the character of the governmental action,"** Penn Cent., 438 U.S. at 124, 98 S. Ct. 2646. While these factors provide "important guideposts," "[t]he Takings Clause requires careful examination and weighing of all the relevant circumstances." Palazzolo, 533 U.S. at 634, 121 S.Ct. 2448 (O'Connor, J., concurring); see also Tahoe-Sierra, 535 U.S. at 321, 122 S.Ct. 1465 (whether a taking has occurred "depends upon the particular circumstances of the case"); Yee v. City of Escondido, 503 U.S. 519, 523, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992) (regulatory taking claims "entail[] complex factual assessments"). Lost Tree Vill. Corp v. United States, 115 Fed. Cl. 219, 228 (2014) (emphasis added).

137.   Since Defendants' proclamations and orders, the Plaintiffs have not been permitted to use their physical locations to operate their businesses, nor have they been allowed to use their tangible property for any economically profitable use. Indeed, despite the fact that Plaintiffs and those similarly situated are legally permitted to sell food in accordance with their food service establishment permits, they are being banned from doing so.

138.   The physical locations of the Plaintiffs are not usable for any purpose, nor can these affected physical locations currently be bought, sold or leased, nor can the Plaintiffs' tangible property be used to generate income while the Defendants' proclamations and orders are in effect.

139.   The Defendants' proclamations and orders re about to either entirely drain the Plaintiffs' property of all economic value during its pendency or has already done so. In either event, the diminution of value and government interference caused by this Order is an unconstitutional taking without just compensation.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of itself and the Class, respectfully ask the Court to grant Plaintiffs the following relief:

A.   Designation of this action as a class action;

B.   Designation of Plaintiffs as representative Plaintiffs of all Honolulu bars and nightlife operations that have been unconstitutionally shut down since March 20, 2020, due to Defendants' Executive Orders and Proclamations;

C.   A declaratory judgment that the Executive shutdown Orders and Proclamations violate Plaintiffs' and Members of the Putative Class's constitutional rights as set forth in this Complaint; are void for vagueness and not narrowly tailored; and/or enjoin Governor Ige and Mayor

Caldwell from enforcing the Executive Orders and Proclamations as they relate to bars and nightlife operations in the City and County of Oahu, and from issuing any future orders or rules similar to the invalid ones described in this action; and

F.      Grant a preliminary injunction enjoining the enforcement and further enforcement of the executive orders; and

G.      Just compensation in the amount of $50,000,000.00; and

H.      Award Plaintiffs their reasonable attorneys' fees, costs, and expenses under applicable state law; and

I.      Any other such further relief to which Plaintiffs and members of the putative Class may be entitled as a matter of law or equity, or which the Court determines to be just and proper.

Dated:      Honolulu, HI
            October 20, 2020

                              **DIPASQUALE & SUMMERS, LLP**
                              Attorneys for Plaintiffs

                        By:   /s/ James D. DiPasquale, Esq.
                              _____
                              James D. DiPasquale (011033)
                              1003 Bishop Street, Suite 1260
                              Honolulu, Hawaii 96813
                              Telephone:  (808) 240-4771
                              Email: James@DS-LawOffices.com